IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**KENAN TRANSPORT COMPANY,**

                              **Plaintiffs,**

       **v.**                                                    **1:04-cv-3186-WSD**

**THE UNITED STATES COAST
GUARD; and NATIONAL
POLLUTION FUNDS CENTER, as
Administrator of the Oil Spill
Liability Trust Fund,**

                              **Defendant.**

## ORDER

This matter is before the Court on Plaintiff Kenan Transportation Company's

Complaint [1] challenging the decision of the United States Coast Guard and the

National Pollution Funds Center (hereafter collectively the "Government") for

denying Plaintiff reimbursement of removal costs resulting from a discharge from

one of Plaintiff's tanker trucks.

_Background_

This is an action under the Administrative Procedure Act, 5 U.S.C. § 706

("APA"), for the Court's review of a final determination issued by the National

Pollution Funds Center on October 22, 2003.  The final determination arises out of

an accident on August 5, 1998.  On that date there was a collision between a 1989

Ford Ranger pickup truck driven by Lisa Huffman ("Huffman") and a tanker truck

owned by Plaintiff Kenan Transportation Company ("Kenan").  The accident

resulted in the discharge of approximately 3,000 gallons of diesel fuel from the

tanker truck.  The fuel was spilled on soil and impacted stormwater catch basins

which discharged into the Chattahoochee River, a navigable water.  Kenan incurred

the expense to conduct emergency clean-up operations following the accident by

hiring a local emergency response contractor to perform the clean-up work.  The

total clean-up costs were $105,575.02.  The tanker truck also was significantly

damaged.  The truck was determined to be a total loss with property damage valued

at $34,884.89.

Huffman was insured by Allstate Insurance Company ("Allstate") with a

liability policy limit of $25,000.  On September 11, 1998, Kenan's Claims

Manager, Mr. Hal Walker wrote to DeAndre Earl at Allstate.[1]  (Administrative

Record ("AR") 000207.)  The letter referenced the claim Kenan asserted against

---

[1]  The copy of this letter in the Administrative Record before the Court is
partially obscured by a receipt for certified mail which was copied when the letter
was copied.  This obstruction does not prohibit review of the parts of the letter
material to this Court's review of the record.

2

Allstate's insured, Ms. Huffman, as a result of the August 5, 1998 accident.  (Id.)

The purpose of the letter was to recap the amounts claimed by Kenan against Ms.

Huffman.  The amount claimed was $77,905.73, broken down as follows:

Equipment

| | |
|---|---|
| Tractor | $34,844.89 |
| Trailer | To be determined |
| Towing/Recovery | $  4,346.00 |

Clean-up

| | |
|---|---|
| Paid to date | $38,714.84 |
| Loss of use | To be determined |
| Cargo | To be determined |

Total loss to date          $77,905.73

(Id.)  The letter noted "Clean-up costs are continuing as directed by GA EPD."  (Id.

at 000208.)  The letter concluded "Please forward a check payable to Kenan

Transport Company, to my attention, as soon as possible."  (Id.)  In apparent

response to this correspondence, DeAndre Earl sent to Mr. Walker a Release of All

Property Damage Claims, under a note which read: "Dear Sir, please review and

sign for payment of your subrogation demand."  (Id. at 000209.)  Mr. Walker

executed the Release of all Property Damage Claims (the "Release").[2]  The Release

refers to "Claim No. 409-419-9999" and stated consideration in the amount of

$25,000 to be paid on behalf of Ms. Huffman.  Mr. Walker executed the Release

without any amendments or changes to it, except when he signed it he did so as

follows:  Hal Walker, Claims Manager, Kenan Transport Company.  (Id. at

000210.)  He apparently returned the executed Release to DeAndre Earl by striking

through the word "From" in the cover note to Mr. Walker and writing in the word

"To" to show the Release was being returned to Ms. Earl.  (Id. at 000209.)  About

two weeks later, a check in the amount of $25,000 made payable to Kenan

Transport Company (the "Check") was tendered to Kenan by Allstate.  The check

referenced a "Claim Number 409419999" and stated as follows:

> Final settlement of any and all claims for property
> damage caused by accident on 08/05/98.
>
> and
>
> Full and final settlement of all property damage arising
> from accident.

(Id. at 000211.)

---

[2]  This executed release is attached by Kenan as Exhibit D to the Complaint
and is the release at issue in this matter.

In signing the Release, Mr. Walker agreed:

> for myself and for my heirs, personal representatives and
> assigns, I do hereby release and forever discharge Lisa
> Huffman and any other person, firm or corporation charged
> of chargeable with responsibility or liability, their heirs,
> representatives and assigns, from any and all property claims,
> demands, damages, costs, expenses, actions and causes
> of action arising from any act or occurrence up to the
> present time and particularly on account of all property
> damage, or damages of any kind related to property only,
> already sustained or that I may hereafter sustain in con-
> sequence of an accident that occurred on or about the
> 5th day of August, 1998, at or near Marietta, Road.
>
> . . .
>
> I hereby agree that, as a further consideration and induce-
> ment for this compromise settlement, this settlement
> shall apply to all unknown property damages resulting
> from said accident, casualty or event, as well as to those
> now disclosed.
>
> I understand that the parties hereby released admit to no
> liability of any sort by reason of said accident and that
> said payment and settlement in compromise is made
> to terminate further controversy respecting all claims for
> damages that I have heretofore asserted or that I or my
> personal representative might hereafter assert because
> of the said accident.

(AR 000210; Complaint, Ex. D.)

On or about November 8, 2001, Kenan filed its claim with the National

Pollution Funds Center ("NPFC") (the "Claim"). (AR 000007.) The claim is asserted under the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701 et seq.[3] The OPA provides that an owner of a facility[4] is responsible for spill removal costs into navigable waters. Id. §§ 2701(32)(B), 2702. OPA provides, however, that the owner may be reimbursed for clean up costs incurred if the spill is caused by a third party. Id. §§ 2702(d)(1)(A), 2703(a)(3). Reimbursement is conditioned upon the claimant transferring to the government the claimant's rights to recover from the responsible third party. Id. § 2712(f).

Kenan's claim was submitted on a NPFC Standard Claim Form (the "claim"). Kenan characterized, in paragraph 3, its claim as one for "Removal Costs." (AR 000005.) In paragraph 4 it stated it had "communicated with the responsible party" and in paragraph 5 represented its "claim had been submitted to the responsible party." (Id.) Next to this representation, Kenan wrote that its claim

---

[3] The United States Coast Guard administers the OPA. The Act provides for the creation of the Oil Spill Liability Trust Fund (the "Fund") for payment of uncompensated removal costs that are consistent with the National Contingency Plan and for the payment of uncompensated damages. §§ 2712(a)(3),(4), 2713(b)(1)(B). This fund was created pursuant to 26 U.S.C.A. § 9509 and is administered by the NPFC, which was established pursuant to 40 C.F.R. § 300.5.

[4] The "owner or operator of a facility" includes motor vehicles used for storing and transporting oil. 33 U.S.C. §§ 2701(9) and (32), and 2702.

had been submitted to the responsible party on "9/11/98."[5]  In paragraph 6, Kenan

represented that its 9/11/98 claim had been "Paid in part" stating further it had

"Received $25,000 from insurer for responsible party."  (<u>Id.</u>)

Kenan and the Government agree that Huffman is a third party liable for the

August 5, 1998 spill.  The Government, however, denied Kenan's reimbursement

claim.  Plaintiffs contend that in executing the Release and accepting the Check,

Kenan limited the Government's right to recover from Huffman, in violation of the

conditions set out in 33 U.S.C. § 2708.  Kenan argues the Release was a limited

property damage release that released only its claims against Huffman for damage

to its tanker truck.  The parties have stipulated that the issue in this case is the

scope of the Release and whether it limited the Government's right to recover from

Huffman in violation of § 2708.

<u>Standard of Review</u>

This is a review of a final agency decision under the APA.  The Court must

determine, based on the administrative record, whether the NPFC's decision to

deny Kenan's claim was "arbitrary, capricious, an abuse of discretion, or otherwise

---

[5]  This is the date Kenan demanded reimbursement from Allstate for damage
to its truck and for clean-up costs it had incurred.

not in accordance with law."  <u>Fund for Animals, Inc. v. Rice</u>, 85 F.3d 535, 541

(11th Cir. 1996).  "To determine whether an agency decision was arbitrary or

capricious, the reviewing court must consider whether the decision was based on a

consideration of the relevant factors and whether there had been a clear error of

judgment.  This inquiry must be searching and careful, but the ultimate standard is

a narrow one."  (<u>Id.</u>)

## <u>Discussion</u>

As the parties have stipulated, the Court is required to decide if the NPFC's

denial of Kenan's claim for clean-up costs was arbitrary, capricious, an abuse of

discretion, or contrary to law.  The issue centers around the Release, the Check by

which remittance was made to Kenan by Allstate, the scope of these writings and

whether they hindered the Government from acquiring "by subrogation all rights of

the claimant or State to recover from the responsible party."  33 U.S.C. § 2712(f).

The initial question is what is required by § 2712(f).  The process for

reviewing the requirements of a statute were summarized by our circuit in

<u>United States v. DBB, Inc.</u>, 180 F.3d 1277 (11th Cir. 1999):

> The starting point for all statutory interpretation is the
> language of the statute itself.  We assume that Congress
> used the words in a statute as they are commonly and

8

> ordinarily understood, and we read the statute to give
> full effect to each of its provisions.  We do not look
> at one word or term in isolation, but instead we look to
> the entire statutory context.  We will only look
> beyond the plain language of a statute at extrinsic
> materials to determine the congressional intent if:
> (1) the statute's language is ambiguous; (2) applying it
> according to its plain meaning would lead to an absurd
> result; or (3) there is clear evidence of contrary legislative
> intent.

Id. at 1281 (citations omitted).  We apply this process here.

An owner of a on-shore facility is responsible for removal costs associated

with spills into navigable waters.  Id. §§ 2701(32)(B), 2702.  Section 2702

specifically provides:

> [E]ach responsible party for a vessel or a facility from
> which oil is discharged, . . . into or upon the navigable
> waters . . . is liable for the removal costs and damages
> specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a).  Accordingly, the party is responsible for clean-up costs and

subsection (b) damages.  Subsection (b) describes the damages for which the party

is responsible, and they include:  (i) damage to natural resources ("recoverable by a

United States Trustee, a State trustee, an Indian tribe trustee, or a foreign trustee");

(ii) damage to real or personal property ("recoverable by a claimant who owns or

leases that property"); (iii) loss of subsistence use of natural resources

("recoverable by any claimant who so uses natural resources which have been

injured, destroyed, or lost, without regard to the ownership or management of the

resources"); (iv) loss of revenues, such as net loss of taxes and royalties

("recoverable by the Government of the United States, a State, or a political

subdivision"); (v) profits and earning capacity equal to the loss of profits or

impairment of earning capacity (recoverable by any claimant); and, (vi) public

services measured by the net costs of provided increased or additional public

services during or after spill removal activities ("recoverable by a State, or a

political subdivision of a State").  33 U.S.C. § 2702(b)(2)(A-F).

A responsible party can avoid liability for removal cost and for subsection

(b) damages where a third party is liable for the spill:

> A responsible party is not liable for removal costs or
> damages under section [2702] . . . if the responsible party
> establishes, . . . that the discharge . . . and the resulting damages
> or removal costs were caused solely by (3) an act or omission of a
> third party.

Id. at 2703(a)(3).  Where a third party is determined to be liable for the spill event,

the responsible party may present a claim to the NPFC for removal costs and

damages.  Id. at § 2708(a)(1).  Section 2712(f) imposes the following limitation on

claim payments from the Fund:

10

> Payment of any claim or obligation by the Fund under this
> Act shall be subject to the United States Government acquiring by
> subrogation all rights of the claimant or State to recover from the
> responsible party.

33 U.S.C. § 2712(f).

The issue before the Court centers on the Release.  Kenan argues the Release as limited to a release of Huffman only for property damage to Kenan's truck that was involved in the accident.  Kenan argues the Release does not impact the Government's right to assert against Huffman an action for recovery of reimbursement it might make to Kenan for the cost incurred to respond to the spill. Kenan's argument is a practical one:  The claim is only for spill clean-up costs, clean-up costs are not property damage and thus the Government is not barred by the Release from asserting an action against Huffman or any other person to seek recovery of any clean-up recovery reimbursement made to Kenan.

The Government argues that Congress conditioned reimbursement of clean-up cost and damages on a responsible party preserving all claims that the responsible party could assert against a third-party (or arguably any other person) and to which the Government would be subrogated.

The OPA imposed broad liability upon a person responsible for a spill.  The

responsible party is liable for clean-up costs and a wide variety of damages ranging from damage to real and personal property to lost of profits and earning capacity. 33 U.S.C. §§ 2702(b)(2)(A-F).  The imposition of this liability encourages a responsible party to act promptly when a spill occurs to mitigate spill effect and the damages resulting from it.[6]  The statute further encourages prompt action in the event of a spill by assuring the spiller of compensation by the Government of clean-up costs incurred and damages paid where a third party ultimately is found responsible for the spill-reimbursement, even if the third party ultimately cannot afford to compensate the Government for clean-up costs or damages paid. Reimbursement was simply conditional on the spiller making sure it preserves for the Government all claims against the responsible third party.

What the statute requires to be preserved is broad.  Section 2712(f) requires a claimant to insure that the Government acquires **all rights of the claimant** to recover from the responsible third party.  Congress did not limit the obligation only to the right to assert clean-up cost claims against the third party.  Rather, it required

---

[6]  The Senate Report regarding the bill states: "What the Nation needs is a package of complementary international, national, and State laws that will . . . provide quick, efficient cleanup" of oil spills.  S. Rep. 101-94, at 2 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 723.

broadly that the claimant assure **all rights be acquired by the Government**.  In enacting the OPA, Congress created a common sense parity of rights and obligations in cases of third-party liability.  First, it imposed broad liability on a responsible party, but allowed a responsible party to be reimbursed if it can show a third party was responsible.  Reimbursement is allowed only if claims against the third party are preserved so they may be asserted by the Government as subrogee of the claims.  That Congress would condition the payment of a claim in return for the claimant broadly protecting the Government's right to assert a broad set of claims against the third party, makes practical and legal sense.[7]

The remaining question then is whether the Release interferes with Kenan's ability to meet the requirements of Section 2712(f).  Kenan argues the Release simply releases Ms. Huffman from liability for damage to Kenan's truck, basing its

---

[7]  That Congress required a claimant to preserve all rights it had against a third party is clear in the legislative history.  The Senate bill had proposed that the Fund "acquire by subrogation the rights of claimants to which the Fund paid removal costs or damages and to recover those removal costs or damages from the responsible party."  The House bill proposed that reimbursement be conditioned on the Government "acquiring by subrogation all rights of the claimant or State to recover from the responsible party."  H.R. Court. Rep. No. 101-653, at 115-16 (1990), reprinted in 1990 U.S.C.C.A.N. 779, 795.  The conference rejected the Senate limitation to clean-up costs and damages and adopted, instead, the "all rights" version.  Id.

argument on the fact the Release is limited to a release of claims for "Property Damage."  The Government argues the Release is broader than just a release of property damage to the truck, the condition of § 2712(f) is thus violated, and the decision to deny Kenan's reimbursement of clean-up costs claim was not arbitrary, capricious, an abuse of discretion or not in accordance with applicable law.  The Court agrees the Government was permitted to deny the claim on the facts here.[8]

The question here is the scope of the Release and whether it violated the condition set out in § 2713(f).  Where the terms of a release are general, "their operation will be limited to those things within the contemplation of the parties at the time of its execution."  Hudson v. Hudson, 220 Ga. 730, 734-735, 141 S.E.2d 453, 456 (1965).  "Parties may execute an instrument which will release all claims of every character, although they may not have in special contemplation a particular claim or item of damages."  Central Ga. Power Co. v. Pope, 144 Ga.

---

[8]  The Court notes that the Release, on its face, is a release of claims by an individual, who purports to release claims of himself, his heirs, personal representatives and assigns, but who signs the release as "Claims Manager, Kenan Transport Company."  Thus, there is the initial question of who is releasing claims.  Since the parties have not raised this obvious issue, the Court assumes the parties either agree the Release was executed on behalf of Kenan or that Kenan has decided not to contest that the Release was executed on behalf of, and thus is binding upon, Plaintiff.

14

130, 134, 86 S.E. 322, 324 (1915).  "[S]ince contracts must be construed according to the intention of the parties at the time of their execution it will not be presumed that parties intend to contract away their legal rights in regard to a subject matter not clearly appearing therein."  <u>Covington v. Brewer</u>, 101 Ga. App. 724, 729, 115 S.E.2d 368, 372 (1960).

> It is a maxim of contract law that the instrument should be so construed as to give effect to the parties' intentions.  When a standard form release is employed, it is essential that any accompanying properly authenticated contemporaneous documents be construed in pari materia with the form release, so that the intention of the parties may be ascertained and allowed to control.

<u>Georgia Highway Express v. United Parcel Service, Inc.</u>, 164 Ga. App. 674, 675, 297 S.E.2d 497, 498 (1982).

The question for the Court is (i) what did the Release language itself say about the intention of the parties in executing the Release; (ii) if there is an ambiguity, what intrinsic evidence is available to resolve the ambiguity, and (iii) in interpreting the Release language alone or using extrinsic evidence to resolve any ambiguity, did the Government act arbitrarily, capriciously, in abuse of its discretion, or not in accordance with applicable law in denying the claim.

The Court begins with the Release language.  It recites three descriptions of

what is released.  The first is:

> any and all property claims, demands, damages, costs,
> expenses, actions and causes of action arising from any
> act or occurrence up to the present time and particularly
> on account of all property damage, or damages of any
> kind related to property only, already sustained or that I
> may hereafter sustain in consequence of an accident that
> occurred on or about the 5th day of August, 1998, at or
> near Marietta, Road.  (AR 000210.)

The second is:

> all unknown property damages resulting from said
> accident, casualty or event, as well as to those now
> disclosed.  (Id.)

The third is:

> all claims for damages that I have heretofore asserted
> or that I or my personal representative might hereafter
> assert because of the said accident.  (Id.)

The parties agree Huffman was released from Kenan's claim for damage to the

tanker truck.  Where they disagree is whether other claims were released and,

specifically, whether a claim for clean-up costs were released.  The first set of

claims released consist of those (1) "arising from any act or occurrence up to the

present time and particularly on account of all property damage," **or** (2) "damages

of any kind related to property only," **or** (3) that "I may hereafter sustain in

consequence of" the August 5, 1998 accident.  The language alone indicates that

the claims released were not only claims "to" property, but also claims of damage

of "any kind <u>related to property</u>."  (<u>Id.</u>) (emphasis added)  Claims for damage that

were  sustained, discovered or asserted after execution of the Release also were

included within the scope of the Release.  The language of the Release itself

indicates the Release is broad in scope and certainly included claims in addition to

the damage to the truck.  To interpret the Release as Kenan argues would make

meaningless a large portion of the Release language.  For example, the plain

language of the Release includes claims of damage to property and "damages

related to" property.  Use of the phrase "related to" necessarily includes claims

other than those for damage to property itself.  While obvious on its face, the

phrase "related to" expands the release beyond claims for damage to property.

    While the Court could not find a case interpreting "related to" language used

in a release, where the phrase has been considered, it has been interpreted broadly.

In <u>Wise v. Tidal Construction</u>, 261 Ga. App. 670, 583 S.E.2d 466 (2003), the

Georgia Court of Appeals interpreted the scope of a clause intended to cover

"[a]ny and all disputes and controversies arising under or related to" an agreement.

The Court in <u>Wise</u> stated that use of the phrase "was intended to be broad enough

17

in scope to reach all disputes." Id. at 672 (stating that a "related to" provision "constitutes the broadest language the parties could reasonably use to subject their disputes to that form of settlement [arbitration]").

Here, there was a spill of oil as a result of the damage to the tanker truck, and the oil was discharged onto real property and into navigable water. The impact of the oil on real property and into water entitles those who were damaged to assert claims for the damage suffered. The Release, by its terms, did not just release claims of damages to property, but also released claims for "costs" and "expenses" arising out of the liability creating event. (AR 000210.) Furthermore, any claim "relating to" this damage was released. The effort and expense incurred to contain and recover the spill necessarily is a "cost" or "expense" "arising from any act or occurrence up to the present time and particularly on account of all property damage" specifically, damage to the tanker truck. It also is a claim related to the property damage which Kenan acknowledges occurred. Claims for these "costs" or "expenses" were barred by the Release. Thus, in the context of the costs incurred in this case Kenan released claims which it was required by section 2712(f) to preserve. In doing so, Kenan is not able to fulfill the conditions precedent to reimbursement by NPFC and its claim for reimbursement of

containment and recovery cost were appropriately denied.[9]

Even if this Release were determined to be ambiguous as to its scope, the extrinsic evidence associated with the Allstate settlement confirms that payment made to Kenan by Allstate was to settle all of the claims Kenan asserted, including its claim for clean-up costs.  Kenan's September 11, 1998 letter to Allstate was clear.  (AR 000207-208.)  Kenan was asserting claims and seeking reimbursement for two costs–damage to the truck and the costs to clean-up the spill.  This claim was assigned a number and it was that numbered claim–with its two component parts–for which $25,000.00 was paid to Kenan and for which Kenan executed the

---

[9] That the Release expanded beyond a claim for such damage is further evidenced by the fact that future claims and other unknown claims also were released.  The claim asserted by Kenan against Allstate's insured by its terms stated that damages were not completely known and that the claim was continuing to accrue.  The cases relied on by Kenan to support its "damage to the truck only" interpretation of the Release do not advance its argument.  In Glover v. Southern Bell Tel. & Tel. Co., 229 Ga 874, 195 S.E.2d 11 (1972), the release was limited to property damage to a specific vehicle because the release was "from any and all present and future claims for property damage to a 1963 Thunderbird arising out of an accident involving company vehicle No. G6-1587-20, which occurred on or about the 14th day of August, 1967."  Id.  at 875, 195 S.E.2d at 12.  Had the Release used this kind of specific language here, it is unlikely the dispute in this case would have arisen.  In Ganton Technolgies, Inc. v. Quadion Corp., 834 F. Supp. 1018 (N.D. Ill. 1993), the claim was for recovery of costs under CERCLA for remediation of the party's own facility, which was contaminated.  Thus, the Court there was not considering if clean-up costs were related to property damage.

Release.[10]  That the settlement and Release included clean-up costs were confirmed when Kenan filed the Claim in which it admitted it received $25,000,  to compensate Kenan for clean-up costs.

The case of Robinson v. Baker, 141 Ga. App. 43 (1977), is instructive.  In Robinson, the Court considered a settlement check which had on it a notation that the check was for all claims "arising from the loss or accident mentioned on [the check]."   A  letter was sent in close proximity of the check.  The letter specified that the settlement was for $173.15 in property loss.  Id. at 43-44.  The Court limited the scope of the release to only property loss in the amount stated in the letter.  Like the Court in Robinson, the Court here has interpreted the scope of the Release consistent with the scope stated in Kenan's written communications to Allstate.  Those communications state expressly that Kenan was asserting, and settling, a claim which included clean-up costs it incurred.

The Court also has considered the requirement of section 2712(f).  It is

---

[10]  In light of Kenan's September 11, 1998 letter, it would have been incumbent upon Allstate to obtain on behalf of its insured Huffman a release of all claims against Huffman, (especially when Kenan was asserting that its claim was continuing to accrue) if it was going to offer the limits of Huffman's policy.  It is difficult to believe Allstate would have accepted a release on limited truck damage in the circumstances here.

20

important to understand what the OPA seeks to accomplish.  First, it imposes a broad liability on a facility when an oil spill occurs.  The facility is strictly liable to those classes of claimants who are affected and damaged by a spill, even if the spill is ultimately determined to be caused by a third party.  That is, the statute imposes a duty on the responsible party to compensate claimants.  However, where a responsible party can show that the spill was caused by a third party, it may seek reimbursement from the Fund of recovery costs and any damage claims it paid.

The effect of this government reimbursement is to encourage claims payment by the responsible party by providing for a statutory right to reimbursement of amounts paid.  This right necessarily is contingent upon the responsible party broadly preserving the Government's right to assert against the responsible third party any claim (including claims for each of the types of damages enumerated in § 2702) which could have been asserted by the responsible party itself.  The Release significantly impaired the Government's subrogation rights which § 2708 was enacted to protect.  For example, if a real property owner claimed damage to her real property from the spill, Kenan was statutorily liable for this damage under § 2720.  The Government, in turn, was responsible for reimbursing Kenan for the damage payment it made to the property owner to

compensate her for her damage, provided Kenan protected its claim against Huffman for the damage of which she ultimately was a cause.  Kenan, however, broadly released all claims for property damage and all claims relating to damage to the truck.  This violated § 2708 and thus it was appropriate to deny reimbursement from the Fund.

*Conclusion*

The Court concludes that the Government's decision to deny Kenan's reimbursement claim was not arbitrary, capricious, an abuse of its discretion or not in accordance with applicable law, and reimbursement was properly denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Government's denial of Kenan Transports claim for reimbursement is **AFFIRMED**.


**SO ORDERED** this 19th day of May, 2006.



_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE